# United States Court of Appeals

*for the*

# Fifth Circuit

---

Case No. 22-40728

LISA TORREY; KATHRYN KOCUREK, Individually and on behalf of the Estate of J. DAVID KOCUREK, PH.D.; AMY HANNEKEN; JANE POWELL; CAROL FISCH; JOHN VALERIO, Individually and as Next Friend of CHRISTOPHER VALERIO; RANDY SYKES; BRIENNA REED; ROSETTA FULLER; ADRIANA MONTEIRO MOREIRA; JESSICA MCKINNIE; KRISTINE WOODARD; GAYLE CLARKE; ALLISON LYNN CARUANA; CHLOE LOHMEYER; TAWNYA DAWN SMITH, Individually and as Next Friend of MONET PITRE; MIKE PEACHER, Individually and as Next Friend of ASHLEIGH PEACHER; ALARIE BOWERMAN, Individually and as Next Friend of ELISA BOWERMAN, EMORY BOWERMAN and ANAIS BOWERMAN,

*Plaintiffs-Appellants,*

v.

INFECTIOUS DISEASES SOCIETY OF AMERICA,

*Defendant-Appellee.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, TEXARKANA, IN CASE NO. 0540-5:5:17-CV-190, HONORABLE ROBERT WILLIAM SCHROEDER, III, U.S. DISTRICT JUDGE

## BRIEF FOR DEFENDANT-APPELLEE

CASEY LOW
PILLSBURY WINTHROP SHAW
  PITTMAN, LLP
401 Congress Avenue, Suite 1700
Austin, Texas 78701
(512) 580-9616
casey.low@pillsburylaw.com

ALVIN DUNN
PILLSBURY WINTHROP SHAW
  PITTMAN, LLP
1200 17th Street, N.W.
Washington, DC 20036
(202) 663-8355
alvin.dunn@pillsburylaw.com

*Attorneys for Defendant-Appellee*

# CERTIFICATE OF INTERESTED PERSONS

Counsel of record certifies that the following persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case.  These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Plaintiffs-Appellants | Former or present counsel |
|---|---|
| <ul><li>Lisa Torrey</li><li>Kathryn Kocurek, Individually and on behalf of the Estate of J. David Kocurek, Ph.D.</li><li>Amy Hanneken</li><li>Jane Powell</li><li>Carol Fisch</li><li>John Valerio, Individually and as Next Friend of Christopher Valerio</li><li>Randy Sykes</li><li>Brienna Reed</li><li>Rosetta Fuller</li><li>Adriana Monteiro Moreira</li><li>Jessica McKinnie</li><li>Kristine Woodard</li><li>Gayle Clarke</li><li>Allison Lynn Caruana</li><li>Chloe Lohmeyer</li><li>Tawnya Dawn Smith, Individually and as Next Friend of Monet Pitre</li><li>Mike Peacher, Individually and as Next Friend of Ashleigh Peacher</li><li>Alarie Bowerman, Individually and as Next Friend of Elisa Bowerman, Emory Bowerman and Anais Bowerman</li></ul> | <ul><li>Daniel R. Dutko</li><li>Kendall Valenti Speer</li><li>Ryan Higgins</li><li>Eugene Egdorf</li><li>Lance Lee</li><li>James Brunsting Hartle</li></ul> |

| Defendant-Appellee | Former or present counsel |
|---|---|
| • Infectious Diseases Society of America | • Alvin Dunn<br>• Jack McKay<br>• Michael Warley<br>• Ronald Casey Low<br>• Robert C.K. Boyd<br>• Sara Stinson |

/s/ *Alvin Dunn*
Alvin Dunn

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellee believes that the facts and legal arguments are adequately presented in the briefs and record, such that the decisional process would not be significantly aided by oral argument.

# **Table of Contents**

Page

CERTIFICATE OF INTERESTED PERSONS .......................................................... i

STATEMENT REGARDING ORAL ARGUMENT ............................................. iii

TABLE OF AUTHORITIES ................................................................................. v

JURISDICTIONAL STATEMENT ....................................................................... 1

COUNTER-STATEMENT OF ISSUES PRESENTED FOR REVIEW .................. 2

COUNTER-STATEMENT OF THE CASE ............................................................ 3

SUMMARY OF ARGUMENT ............................................................................. 7

ARGUMENT ...................................................................................................... 9

    I.   The District Court Correctly Dismissed Plaintiffs' Misrepresentation Claims as Based on Nonactionable Medical Opinions ................................... 9

        A.   Scientific and Medical Opinions Are Not Actionable ............................ 9

        B.   The Statements in the 2006 Guidelines Are Nonactionable Medical Opinions Directed to Health Care Providers—Not Statements of Fact . 12

    II.  Affirmance of the District Court's Dismissal of Plaintiffs' New Misrepresentation Claims Would Be Proper on Grounds Not Reached by the District Court ................................................................................... 21

        A.   Plaintiffs' Theory of Derivative Reliance Is Not Supported by the Law or by Plaintiffs' Third Amended Complaint ................................... 21

        B.   Judicial Estoppel Bars Plaintiffs from Alleging New Personal Injury Damages ................................................................................................ 26

    III.  The District Court's Award of Costs To IDSA Should Be Affirmed .......... 29

CONCLUSION ................................................................................................. 29

# Table of Authorities

Page(s)

## Cases

*Am. Sch. of Magentic Healing v. McAnnulty*,
187 U.S. 94 (1902)..................................................................................9

*Arkoma Basin Expl. Co. v. FMF Assocs. 1990-A, Ltd.*,
249 S.W.3d 380 (Tex. 2008) .......................................................17, 18

*Arthur v. Offit*,
No. 01:09-cv-1398, 2010 WL 883745 (E.D. Va. March 10, 2010) ...................12

*Benchmark Elec., Inc. v. J.M. Huber Corp.*,
343 F.3d 719 (5th Cir. 2003) .............................................................23

*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir. 2000) .............................................................24

*Eastman Chem. Co. v. Plastipure, Inc.*,
775 F.3d 230 (5th Cir. 2014) ............................................8, 10, 11, 12

*Ezrailson v. Rohrich*,
65 S.W.3d 373 (Tex. App. 2001).........................................................12

*In re Factor VIII or IX Concentrate Blood Products Litig.*,
25 F.Supp.2d 837 (N.D. Ill. 1998).......................................................24

*Glenn v. Trauben*,
70 Va. Cir. 446 (Va. Cir. Ct. 2004) ...................................................18

*Immuno AG. v. Moor-Jankowski*,
77 N.Y.2d 235, 567 N.E.2d 1270 (N.Y. 1991)...................................17

*Jappell v. Am. Ass'n of Blood Banks*,
162 F.Supp.2d 476 (E.D. Va. 2001) ...................................................24

*Kimmell v. Schaefer*,
224 A.D.2d 217, 637 N.Y.S.2d 147 (N.Y.1996)
(*aff'd*, 89 N.Y.2d 257 N.E.2d 450) ...................................................18

*Lauer v. City of New York*,
   733 N.E.2d 184 (N.Y. 2000) ................................................................24

*In re Lipsky*,
   460 S.W.3d 579 (Tex. 2015) .............................................................17

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
   594 F.3d 383 (5th Cir. 2010) .............................................................16

*Moore v. LaSalle Management Company, L.L.C.*,
   41 F.4th 493 (5th Cir. 2022) .............................................................18

*Mortarino v. Consultant Eng'g Servs., Inc.*,
   467 S.E.2d 778 (Va. 1996) .............................................................17

*Nasser v. Parker*,
   455 S.E.2d 502 (Va. 1995) ......................................................... 23-24

*Norwood v. Raytheon Co.*,
   237 F.R.D. 581 (W.D. Tex. 2006) ....................................................22

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
   720 F.3d 490 (2d Cir. 2013) ................................................11, 12, 16

*Pacira Biosciences, Inc. v. Am. Soc'y of Anesthesiologists, Inc.*,
   No. 22-1411, 2023 WL 2621131 (3d Cir. March 24, 2023) .................11, 12, 16

*Paull v. Cap. Res. Mgmt., Inc.*,
   987 S.W.2d 214 (Tex. App.—Austin 1999, pet. denied) ............................17, 18

*Rhynes v. Branick Mfg. Corp.*
   629 F.2d 409 (5th Cir. 1980) .............................................................24

*Sindhi v. Raina*,
   905 F.3d 327 (5th Cir. 2018) .............................................................18

*Snyder v. American Association of Blood Banks*,
   144 N.J. 269 (1996) .............................................................24

*In re Superior Crewboats, Inc.*,
   374 F.3d 330 (5th Cir. 2004) .............................................................27

*Tate v. Colony House Builders, Inc.*,
   508 S.E.2d 597 (Va. 1999) ................................................................17

*United States ex rel. Morton v. A Plus Benefits, Inc.*,
   139 F.App'x 980 (10th Cir. 2005) .......................................................9

*Weidner v. Marlin*,
   No. 04-96-00160-CV, 1997 Tex. App. LEXIS 4875
   (Tex. App. Aug. 29, 1997) ..................................................................9

*Weigand v. University Hospital of New York University Medical Center*,
   659 N.Y.S.2d 395 (N.Y. Sup. Ct. 1997) ...........................................24

## <u>Constitutions</u>

First Amendment .......................................................................7, 8, 10, 11

## <u>Statutes and Codes</u>

United States Code
   Article 28, Section 1367(d) .................................................................1

Lanham Act .........................................................................................10, 11

RICO ..............................................................................................*passim*

## <u>Rules and Regulations</u>

Federal Rules of Civil Procedure
   Rule 9(b) .......................................................................................23, 25
   Rule 12(b)(6) .......................................................................................2

## <u>JURISDICTIONAL STATEMENT</u>

The District Court had discretionary subject matter jurisdiction over the remaining state common law claims under 28 U.S.C. § 1367(d) after the District Court dismissed all of the federal claims.

## COUNTER-STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Whether the District Court properly dismissed Plaintiffs' new misrepresentation claims asserted in their Third Amended Complaint under Fed. R. Civ. P. 12(b)(6).

2. Whether the District Court properly awarded costs to IDSA, to which Plaintiffs consented.

## COUNTER-STATEMENT OF THE CASE

Appellee Infectious Diseases Society of America ("IDSA") is the world's leading professional society of infectious diseases doctors, scientists, and other healthcare professionals who discover, prevent, and treat some of the world's most dangerous diseases, including AIDS, influenza, and Covid-19. IDSA seeks to improve healthcare by promoting excellence in patient care, education, research, public health, and disease prevention efforts. One of IDSA's functions is to develop voluntary guidelines to assist health care providers with making decisions about appropriate care for specific medical conditions. ROA.353-54.

Plaintiffs-Appellants, patients who allege that they suffer from "chronic Lyme disease" and require long-term antibiotic treatment, brought this action on November 10, 2017, against IDSA, six health insurance companies and a health insurance trade association (the "Insurance Defendants"), and seven individual doctors who were among the fourteen authors of IDSA's 2006 Lyme disease Guidelines (the "Doctors"). Plaintiffs alleged that the Insurance Defendants paid "large consulting fees" to the Doctors to write false and arbitrary Lyme disease Guidelines that would permit the Insurance Defendants to deny coverage for "chronic Lyme disease." ROA.83, 84, 89, 91 (Complaint ¶¶ 48, 54, 68, 76).

Plaintiffs alleged throughout their original Complaint that IDSA's 2006 Lyme disease Guidelines, which IDSA published in its academic journal *Clinical*

*Infectious Diseases* and are available without charge on the Internet,[1] "fraudulently and wrongfully" misled Plaintiffs' doctors (1) by "claiming all Lyme disease patients can be easily treated and cured with short-term antibiotics"; and (2) by "claiming Lyme disease patients only have Lyme disease if they exhibit an EM rash or test positive with a two-tier serology test."  ROA.97 (Complaint ¶ 99).

In their original Complaint, Plaintiffs pled federal RICO and antitrust claims against all Defendants.  ROA.117-124.  Even though Plaintiffs alleged repeatedly that IDSA's Lyme disease Guidelines were false and fraudulent, Plaintiffs did ***not*** plead common law fraudulent or negligent misrepresentation claims against IDSA or any other Defendant in their original Complaint.

Plaintiffs conducted full discovery on their RICO and antitrust claims.  That discovery extended, with breaks for mediation and Covid-19, from September 2018 to January 2021 and included deposing IDSA and each Doctor Defendant.  On January 7, 2021, with fact discovery ending that day, Plaintiffs filed a Second Amended Complaint ("SAC") to try to keep their case alive.  ROA.4861.

In their Second Amended Complaint, Plaintiffs admitted that they lacked the ability even to plead the fraud allegations underlying their RICO claims.  ROA.4871, 4877 (SAC ¶¶ 53, 70).  However, relying on the very same "fraud" facts that they

---

[1] ROA.6002 (referring to the journal name and IDSA copyright in the lower left); ROA.5676 (Internet link to Guidelines (https://academic.oup.com/cid/article/43/9/1089/422463) at footnote 62.)

admitted were insufficient for their RICO claims, Plaintiffs added to their Second Amended Complaint new claims against IDSA for intentional and negligent misrepresentation. ROA.4912-4914. IDSA and the Doctors filed a motion to dismiss Plaintiffs' Second Amended Complaint, including the new misrepresentation claims, and filed a separate motion for summary judgment against Plaintiffs' original RICO and antitrust claims. ROA.5138, 5175.

Instead of defending their new misrepresentation claims as pled in their Second Amended Complaint, Plaintiffs filed a Third Amended Complaint ("TAC"), which purported to plead "Additional Misrepresentations [sic] Facts," ROA.5707. However, the Third Amended Complaint only cited deposition testimony from the Doctors that was consistent with the statements in the Guidelines. ROA.5709, 5711-5712 (TAC ¶¶ 182, 187-189). IDSA and the Doctors then moved to dismiss all claims in Plaintiffs' Third Amended Complaint. ROA.5283.

In response to IDSA and the Doctors' motion for summary judgment against Plaintiffs' original RICO and antitrust claims, Plaintiffs again admitted that they lacked evidence to support their RICO claims. ROA.5354. They subsequently voluntarily dismissed with prejudice (1) their RICO claims against IDSA and the Doctors and (2) their antitrust claims against the Doctors. ROA.6328. Plaintiffs refused to dismiss their antitrust claims against IDSA, arguing they were entitled to take those claims to trial. ROA.5355.

On September 1, 2021, the District Court granted IDSA's motion for summary judgment, dismissing with prejudice Plaintiffs' antitrust claims against IDSA, the only claims remaining from the original Complaint.  The District Court held that, after full discovery, Plaintiffs "cannot provide evidence that [IDSA] formed an agreement with the Doctors and the Insurance Defendants to create and enforce arbitrary guidelines for the treatment of Lyme disease. . . ."  ROA.6406.  Plaintiffs did not appeal that ruling.  Thus, all of Plaintiffs' claims other than their new misrepresentation claims against IDSA had been resolved.

On September 20, 2021, the District Court granted IDSA's motion to dismiss Plaintiffs' misrepresentation claims in their Third Amended Complaint.  The District Court reasoned that because the statements in IDSA's Lyme disease Guidelines are medical opinions and not factual representations, those statements cannot support claims for misrepresentation.  ROA.6419-6420.  The District Court did not rule on separate independent grounds IDSA raised in support of dismissal of the misrepresentation claims.

On January 6, 2022, IDSA filed a motion for entry of its bill of costs, seeking only costs associated with its successful defense of Plaintiffs' original RICO and antitrust claims.  ROA.6442.  On February 23, 2022, Plaintiffs filed a Notice stating that "Plaintiffs agree with Defendant's proposed Bill of Cost [sic]."  ROA.6459.  On

October 4, 2022, the District Court entered an order awarding IDSA costs of $43,940.06.  ROA.6499.  This appeal followed.

## SUMMARY OF ARGUMENT

For over three years Plaintiffs engaged in an admittedly unsuccessful effort to prove that health insurance companies conspired with IDSA and Lyme disease experts to publish Guidelines in an academic journal directed to medical professionals with the goal of denying insurance coverage for "chronic Lyme disease."  On the very last day of the fact discovery period and after all of the insurance company defendants were out of the lawsuit, Plaintiffs pivoted and claimed, on the same facts, that IDSA had defrauded their doctors by making false statements in the Guidelines.

The District Court, after reviewing the Guidelines, concluded that they expressed only medical opinions, not statements of fact that could support misrepresentation claims.  That holding was exactly right:  The Guidelines state one side of a scientific "disagreement or controversy" (Plaintiffs' own words, Brief at 32) regarding the diagnosis and treatment of Lyme disease.  As Plaintiffs recognize, other doctors and medical societies take an opposite position.  That is the stuff of scientific debate.

This Court and others have recognized consistently that "[t]he First Amendment ensures a robust discourse in the pages of academic journals" and that

statements made in academic journals that are directed at the scientific community should be protected as opinions in order to avoid stifling academic debate and interfering with First Amendment values. *Eastman Chem. Co. v. Plastipure, Inc.*, 775 F.3d 230, 237 (5th Cir. 2014). That principle applies fully here.

Two grounds argued below but not decided by the District Court also support affirmance. Plaintiffs had to allege reliance to sustain their misrepresentation claims. Plaintiffs did not claim that they relied on the Guidelines themselves but asserted "derivative" reliance via their doctors. Yet the alleged "derivative reliance" is not supported by the allegations of the Third Amended Complaint or applicable state law.

The District Court's decision could be affirmed as well on the basis of judicial estoppel. When fighting to preserve their RICO claims, Plaintiffs said they were not seeking personal injury damages. The District Court relied on this position. But when Plaintiffs amended their complaint at the end of discovery to add new misrepresentation claims, they reversed themselves to claim personal injury damages on the very same facts.

Finally, the District Court's award of costs to IDSA should be affirmed because (1) IDSA prevailed below on Plaintiffs' RICO and antitrust claims; (2) Plaintiffs did not appeal the judgments with prejudice entered in IDSA's favor on those claims; (3) all of IDSA's awarded costs related to its defense of Plaintiffs'

RICO and antitrust claims; and (4) Plaintiffs consented to the award of costs to IDSA.

## ARGUMENT

## I.    The District Court Correctly Dismissed Plaintiffs' Misrepresentation Claims as Based on Nonactionable Medical Opinions

### A.    Scientific and Medical Opinions Are Not Actionable

As the District Court correctly held, Plaintiffs must support their new misrepresentation claims with alleged false statements of fact, and medical opinions are not factual statements that can support misrepresentation claims.  ROA.6419 (D. Ct. Opinion at 12).

Plaintiffs did not address below and still do not address here the cases on which the District Court relied in holding that medical opinions cannot support misrepresentation claims.  *See Am. Sch. of Magentic Healing v. McAnnulty*, 187 U.S. 94, 105-07 (1902) ("[T]he effectiveness of almost any particular method of treatment of disease is, to a more or less extent, a fruitful source of difference of opinion … . The opinions entertained cannot, like allegations of fact, be proved to be false."); *United States ex rel. Morton v. A Plus Benefits, Inc.*, 139 F.App'x 980, 983 (10th Cir. 2005) ("Expressions of opinion, scientific judgments, or statements as to conclusions about which reasonable minds may differ cannot be false.") (citation omitted); *Weidner v. Marlin*, No. 04-96-00160-CV, 1997 Tex. App. LEXIS 4875, at *27-28 (Tex. App. Aug. 29, 1997) (there is no "false representation of a material

fact" when "there was a legitimate difference of opinion among learned experts" regarding the risk of medical treatments). Affirmance based on the holdings of these cases alone would be appropriate.

Nor do Plaintiffs cite a single case holding that statements in medical practice guidelines—or any statements published in academic journals regarding medical or scientific matters—are factual representations that could support misrepresentation claims.

This Court has recognized that "[t]he First Amendment ensures a robust discourse in the pages of academic journals" and that statements made in academic journals that are directed at the scientific community should be protected as opinions in order to avoid stifling academic debate and interfering with First Amendment values. *Eastman Chem. Co. v. Plastipure, Inc.*, 775 F.3d 230, 237 (5th Cir. 2014). *Eastman* concerned statements made in a sales brochure regarding a competitor's plastic resin product (commercial speech) and statements made in an academic journal intended for scientists (noncommercial speech) and held that alleged false statements made in commercial advertisements concerning scientific matters could be treated as statements of fact that would support a Lanham Act claim ***because they were made outside of academic journals and were made to consumers and not to scientists***. *Eastman*, 775 F.3d at 236.

*Eastman* discussed at length *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490 (2d Cir. 2013), in which the Second Circuit protected as opinions the findings of a study published in a scientific journal. This Court noted that "[a]fter a thorough analysis, the Second Circuit [in *ONY*] concluded that the First Amendment places scientific debates unfolding within the scientific community beyond the reach of the Lanham Act" and that "statements in scientific literature 'are more closely akin to matters of opinion, and are so understood by the relevant scientific communities.'" *Eastman,* 775 F.3d at 235-36 (quoting *ONY*, 720 F.3d at 497). Thus, *ONY* protected studies directed to scientists as opinions, and *Eastman* confirmed that protection. *Eastman* at 236.

Most recently, the Third Circuit considered both *ONY* and *Eastman* and held that statements in a medical journal concerning a pain medication were nonactionable opinions because they were "tentative scientific conclusions subject to revision." *Pacira Biosciences, Inc. v. Am. Soc'y of Anesthesiologists, Inc.*, No. 22-1411, 2023 WL 2621131, at *4 (3d Cir. March 24, 2023) (citing *ONY*, 720 F.3d at 498). *Pacira* addressed *Eastman* and noted that the statements at issue in *Eastman* were actionable because "'Eastman did not sue Appellants for publishing an article in a scientific journal. Rather, Eastman sought to enjoin statements made in

commercial advertisements and directed at customers.'" *Pacira,* 2023 WL 2621131, at *3 n.10 (quoting *Eastman*, 775 F.3d at 236).[2]

All of these cases recognize the importance of protecting medical and scientific opinions intended for doctors and scientists. *Eastman*, 775 F.3d at 236; *ONY*, 720 F.3d at 497; *Pacira*, 2023 WL 2621131, at *5 (protecting scientific opinions to avoid "'chilling' the natural development of scientific research and discourse").

### B.    The Statements in the 2006 Guidelines Are Nonactionable Medical Opinions Directed to Health Care Providers—Not Statements of Fact

The statements in the 2006 Guidelines that form the basis of Plaintiffs' new misrepresentation claims are the consensus recommendations of the document's fourteen authors, based upon their assessment of the hundreds of studies and articles

---

[2]  The U.S. District Court for the Eastern District of Virginia, applying Virginia law, likewise has held a statement expressing "a particular scientific viewpoint and policy position" made as part of "an ongoing, heated public health controversy" was "a protected expression of opinion." *Arthur v. Offit*, No. 01:09-cv-1398, 2010 WL 883745, at *6 (E.D. Va. March 10, 2010). (As described below, Virginia law applies to Plaintiffs' new misrepresentations claims.) Furthermore, this principle has been applied to protect medical opinions under the state laws that Plaintiffs urge, Texas and New York. *See Ezrailson v. Rohrich*, 65 S.W.3d 373, 375 (Tex. App. 2001) (under Texas law, statements in a medical science research article that discussed a research test were "opinions [that] . . . must be protected"); *ONY*, 720 F.3d at 498 (applying New York law).

they cite as references. ROA.6038-6047.[3]  They were published in IDSA's academic journal (*Clinical Infectious Diseases*), are directed toward professional health care providers, and concern an important matter of public health and medicine. The Guidelines set forth medical opinions that cannot support misrepresentation claims.

The Guidelines state on their first page in bold type that they "**are intended for use by health care providers who care for patients who either have these infections or may be at risk for them**." ROA.6002 (emphasis original). In a note at the bottom of their first page they make clear the Guidelines are voluntary:

> It is important to realize that guidelines cannot always account for individual variation among patients. They are not intended to supplant physician judgment with respect to particular patients or special clinical situations. The Infectious Diseases Society of America considers adherence to these guidelines to be voluntary, with the ultimate determination regarding their application to be made by the physician in the light of each patient's individual circumstances.

---

[3]  Dozens of other individuals, including doctors and scientists, contributed to the development and publication of the Guidelines:

> We thank Lisa Giarratano and Richard Minott for assistance in the preparation of this manuscript. The following individuals served as consultants to the Infectious Diseases Society of America panel in the development of these guidelines: Maria Aguero-Rosenfeld, Stephen W. Barthold, Susan O'Connell, Volker Fingerle, Jerry Green, Barbara J. Johnson, Richard Kaplan, Jooyun Lee, Muhammad Morshed, Jose Munoz, Benjamin H. Natelson, John Nowakowski, Mario Philipp, Joseph F. Piesman, Arthur Weinstein, and Bettina Wilske. The Expert Panel also wishes to express its gratitude to Paul G. Auwaerter, Michael A. Gerber, and Leonard H. Sigal for their thoughtful review of an earlier draft of these guidelines.

ROA.6038.

ROA.6002. There is no doubt that the Guidelines are intended for health care professionals, not patients or consumers, and that they are voluntary.[4]

There is also no doubt that the Guidelines address matters of public health and medicine about which there is an ongoing debate. Even Plaintiffs acknowledge that there is a scientific controversy regarding the proper treatment for Lyme disease. The Third Amended Complaint describes the "scientific controversy" regarding Lyme disease (ROA.5667 (TAC ¶ 58)); the different "opinions" regarding Lyme disease diagnosis and treatment (ROA.5663, 5675, 5689 (TAC ¶¶ 44, 72, 109)); how certain doctors "who actually treat Lyme disease" understand the need for long-term antibiotics (ROA.5659 (TAC ¶ 31)); how some doctors follow Lyme disease guidelines issued by other professional societies—including the International Lyme and Associated Diseases Society ("ILADS")—that set forth different medical opinions regarding Lyme disease diagnosis and treatment (ROA.5691 (TAC ¶ 113)); how over 700 "peer reviewed scholarly articles prov[e] the existence of chronic Lyme disease" (ROA.5673 (TAC ¶ 72)); and how there is a vigorous scientific

---

[4] Notwithstanding these statements on page one of the Guidelines, Plaintiffs assert that the Guidelines have a "pervasive impact" on doctors due to the "symbiotic way in which the insurance companies and IDSA work together to shape insurance coverage." Brief at 35. However, because they had no evidence to support their conspiracy allegations, Plaintiffs dismissed with prejudice their RICO claims and did not appeal the District Court's order dismissing on summary judgment their antitrust claims. They can no longer point to an alleged "symbiotic" relationship that they could not prove.

debate before Congress, state legislatures, and state agencies and in scientific publications (ROA.5673-5676 (TAC ¶ 72)).

The Guidelines themselves also acknowledge the ongoing debate. They discuss and assess in depth the many available studies on "chronic Lyme disease" and long-term antibiotic treatment in depth, noting that whether Lyme disease was the cause of continuing subjective symptoms following initial treatment "is unknown and deserves further study" (ROA.6028); stating that certain findings "cannot be considered reliable" (and explaining why) (ROA.6029); and suggesting that a "controlled, prospective study" could provide more reliable findings regarding post-Lyme disease syndrome. ROA.6029.

The Guidelines also recognize the existence of a debate by avoiding unequivocal statements. For example, the Guidelines state that untreated patients who remain seronegative, despite continuing symptoms for 6-8 weeks, are "unlikely" to have Lyme disease (ROA.6014); that "[m]ost patients" respond completely to antibiotic treatment for early Lyme disease but "[s]ome individuals" have continuing subjective complaints (ROA.6017); and that a "minority of patients" will be symptomatic after recommended antibiotic treatment (ROA.6029); and by qualifying opinions of the available studies by noting that "to date" certain evidence or data has not been found or published. ROA.6010, 6011, 6033-6034. Even Plaintiffs note that rather than taking hard and fast positions, the Guidelines

express "skepticism" and "overall" disapproval of studies relating to "chronic Lyme disease" and "effectively question" the existence of post-Lyme disease syndromes. Brief at 27, 30.

Looking at the Guidelines as a whole, there can be no doubt that the Guidelines set forth nonactionable medical opinions, not statements of fact. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 388 (5th Cir. 2010) (statements "must be read in their entirety to be given effect"). Indeed, the Guidelines are even more clearly entitled to protection than the statements at issue in *ONY* and *Pacira*, which protected statements that analyzed specific drugs. The Guidelines discuss and assess a broad range of medical conditions in connection with providing recommendations regarding the ongoing debate over the diagnosis and treatment of Lyme disease.

In the face of this overwhelming evidence that the Guidelines express opinions in an ongoing scientific debate, Plaintiffs do nothing to demonstrate that the Guidelines contain actionable false statements of fact.

First, Plaintiffs' cases do not support reversal. Plaintiffs do not cite a single case holding a professional medical society liable for statements about medical or scientific matters made to doctors or scientists in an academic journal. Indeed, most of Plaintiffs' cases hold that the statements at issue were reasonably understood as opinions, not as statements of fact, and therefore could not support misrepresentation

claims. *See, e.g.*, *Paull v. Cap. Res. Mgmt., Inc.*, 987 S.W.2d 214, 219 (Tex. App.—
Austin 1999, pet. denied) (statements regarding the risk of an oil and gas project
were opinions that could not support misrepresentation claims); *Tate v. Colony
House Builders, Inc.*, 508 S.E.2d 597, 599 (Va. 1999) ("expressions of opinion [that
house was competently designed and of the highest quality] cannot form the basis of
an action for fraud"); *Arkoma Basin Expl. Co. v. FMF Assocs. 1990-A, Ltd.*, 249
S.W.3d 380, 384–85 (Tex. 2008) (reserve estimates for a new natural gas field could
not support a fraud claim). *See also Immuno AG. v. Moor-Jankowski*, 77 N.Y.2d
235, 567 N.E.2d 1270 (N.Y. 1991) (letter to the editor regarding using chimpanzees
for medical research published in a scientific journal protected as opinion under New
York law).

Even where Plaintiffs' cases hold that the statements at issue could support a
misrepresentation claim, they concern specific statements about property in
commercial contexts, not statements regarding scientific or medical matters. *See,
e.g., Mortarino v. Consultant Eng'g Servs., Inc.*, 467 S.E.2d 778, 781 (Va. 1996)
(statement that no wetlands are on the property are statements of fact); *Tate*, 508
S.E.2d at 599 (Va. 1999) (statements regarding present quality of house are
statements of fact); *In re Lipsky*, 460 S.W.3d 579, 594 (Tex. 2015) (statements
regarding impact of natural gas drilling on water quality are statements of fact).

These cases provide absolutely no support for Plaintiffs' argument that medical practice guidelines contain actionable statements of fact.

Second, Plaintiffs argue that even if the Guidelines are medical opinions, those opinions may be actionable under "exceptions" to the admitted general rule that expressions of opinion cannot support a misrepresentation claim. Brief at 33. Plaintiffs made no such argument in the District Court, and their new "exception" argument should be ignored by this Court, which has long held that it will "not consider arguments 'raised for the first time on appeal.'" *Moore v. LaSalle Management Company, L.L.C.*, 41 F.4th 493, 509 (5th Cir. 2022) (quoting *Sindhi v. Raina*, 905 F.3d 327, 333 (5th Cir. 2018)).

Even if considered, Plaintiffs' "exception" cases often find no exception exists, do not address statements made to doctors and scientists, and certainly do not hold that medical or scientific opinions are actionable. *See Paull*, 987 S.W.2d 214 (statements regarding the risk of an oil and gas project were opinions that could not support misrepresentation allegations); *Arkoma*, 249 S.W.3d 380 (reserve estimates for a new natural gas field could not support a fraud claim). Even where Plaintiffs' cases rely on an "exception" to find an opinion actionable, they are inapposite.[5]

---

[5] *Kimmell v. Schaefer*, 224 A.D.2d 217, 637 N.Y.S.2d 147 (N.Y.1996) (*aff'd*, 89 N.Y.2d 257, 675 N.E.2d 450 (alleged false statements of financial performance could support a misrepresentation claim); *Glenn v. Trauben*, 70 Va. Cir. 446 (Va. Cir. Ct. 2004) (unreported state trial court opinion permitting patient to sue her own doctor for misdiagnosis ).

Third, Plaintiffs make false statements regarding the Guidelines themselves. Plaintiffs assert that the Guidelines deny that Lyme disease can persist after short-term antibiotic treatment: "By stating that there is ***no evidence*** of infection after recommended short-term antibiotic treatments, IDSA's Guidelines effectively question the existence of Post-Lyme disease syndromes at all—i.e., the gravamen of the Guidelines is that they ***deny the existence of treatment of failure***." Brief at 30 (emphasis added).

But this assertion is false. The Guidelines in fact state as follows:

> To date, there is ***no convincing biologic evidence*** for the existence of symptomatic chronic B. burgdorferi infection among patients after receipt of recommended treatment regimens for Lyme disease. Antibiotic therapy has not proven to be useful and is not recommended for patients with chronic (>6 months) subjective symptoms after administration of recommended treatment regimens for Lyme disease [].

ROA.6033-6034; Brief at 11, 29, 30 (emphasis added). The Guidelines therefore do not assert that there is "no evidence" of Lyme disease infection after recommended treatment; they assert only that there is "no convincing biologic evidence."

Similarly, Plaintiffs assert repeatedly that the Guidelines falsely state that "there is no treatment failure for any Lyme patient who receives short-term antibiotics." Brief at 12, 47; ROA.5679, 5713 (TAC ¶¶ 84, 193). However, the Guidelines specifically recognize that initial treatment might fail: "***Most patients*** respond promptly and completely" to initial antibiotic therapy and "***[s]ome***

*individuals* have persistent subjective complaints." ROA.6017 (emphasis added). "[A]ppropriate antibiotic treatment leads to recovery in *most patients*." ROA.6023 (emphasis added). "*Not all patients* with Lyme arthritis respond to 2–4-week courses of oral or intravenous antibiotic therapy." ROA.6025 (emphasis added); *see also* ROA.6019 (Table 3, recommending additional courses of antibiotics when necessary to treat Lyme arthritis). The Doctors explained at their depositions that the Guidelines do recognize treatment failure, ROA.5299-5300, but Plaintiffs ignore this testimony.

Plaintiffs also misstate what the Guidelines say regarding testing. In their Third Amended Complaint, Plaintiffs allege that "IDSA tells doctors that the *only* way to determine whether a patient has Lyme disease is the two-tier serologic test." ROA.5711 (TAC ¶ 186); Brief at 10, 12 (emphasis added). However, Plaintiffs do not specify whether they are discussing instances where the Guidelines are addressing early Lyme disease or late Lyme disease. The Guidelines *do not* require a positive result on the standard two-tier test in order to diagnose *early* Lyme disease; indeed, they make clear that for diagnosing *early* Lyme disease, the standard two-tier test is *not* recommended: "Serologic testing is too insensitive in the acute phase (the first 2 weeks of infection) to be helpful diagnostically. Patients should be treated on the basis of clinical findings." ROA.6014. For *later* Lyme disease, the Guidelines state that "serum samples *should* be tested using the 2-tier testing

algorithm recommended by the Centers for Disease Control and Prevention (CDC) and the Association of State and Territorial Public Health Laboratory Directors." ROA.6014 (emphasis added).

In sum, to maintain their misrepresentation claims, Plaintiffs had to demonstrate that the statements in the Guidelines are false statements of fact. They did not do so in their Third Amended Complaint, in briefing before the District Court, or in their brief to this Court. Thus, there is no basis to overturn the District Court's ruling that the challenged statements are "medical opinions, not factual representations" that cannot be the subject of misrepresentation claims. ROA.6419.

## II. Affirmance of the District Court's Dismissal of Plaintiffs' New Misrepresentation Claims Would Be Proper on Grounds Not Reached by the District Court

### A. Plaintiffs' Theory of Derivative Reliance Is Not Supported by the Law or by Plaintiffs' Third Amended Complaint

Reliance is an essential element of any misrepresentation claim. Plaintiffs nowhere allege that they personally relied on the Guidelines, which are directed to doctors and not to patients. Plaintiffs attempt to avoid this fatal deficiency by arguing that it is enough to allege that their doctors relied on the Guidelines.

However, no court has held that patients may use such a "derivative" reliance theory to bring misrepresentation claims against a professional society that issues free voluntary practice guidelines. Virginia in particular has made clear that it would

not extend derivative reliance nearly as far as advocated by Plaintiffs here.[6]
Moreover, even under the derivative reliance standard that Plaintiffs urge the Court
to adopt, Plaintiffs' Third Amended Complaint does not include the necessary
allegations.

The preliminary issue is which state law should be applied to these common
law claims. Both Plaintiffs' brief and their Third Amended Complaint confirm that
Plaintiffs have no idea what law governs their new misrepresentation claims. In their
Third Amended Complaint, which is their second effort to plead their
misrepresentation claims, Plaintiffs make no effort to meet their burden to plead
facts necessary to conduct the choice-of-law "analysis for each plaintiff on an issue-
by-issue basis." *Norwood v. Raytheon Co.*, 237 F.R.D. 581, 594 (W.D. Tex. 2006).

The parties agree that Texas's "most significant relationship" test will
determine the applicable law. Yet Plaintiffs' suggestion that Texas has the most
significant relationship to their claims has no basis on the facts alleged here: The
Third Amended Complaint alleges nothing regarding where Plaintiffs suffered their
alleged injuries or sought treatment but instead alleges that Plaintiffs were required
to visit dozens of doctors and travel to multiple states. *See, e.g.*, ROA.5694 (TAC ¶
123) (Plaintiff Lisa Torrey visited more than 36 doctors); ROA.5683 (TAC ¶¶ 92-

---

[6]  As discussed below, Virginia law—not Texas or New York law—applies to
Plaintiffs' new misrepresentation claims.

93), 5685 (TAC ¶ 100), 5691 (TAC ¶ 115), 5699 (TAC ¶ 130), 5700-5701 (TAC ¶ 137), 5702 (TAC ¶ 151), 5703 (TAC ¶ 157), 5704 (TAC ¶ 161) (multiple Plaintiffs were required to travel to multiple states and long distances). Plaintiffs' suggestion of New York is equally frivolous, as individual doctors did not publish the Guidelines. Moreover, the Third Amended Complaint says nothing about where most of the fourteen authors of the Guidelines lived or worked.

Virginia is the state with the "most substantial relationship" to the new misrepresentation claims pled in the Third Amended Complaint. Those claims are brought only against IDSA, which is headquartered in Virginia and which published the Guidelines in its academic journal, *Clinical Infectious Diseases*. However, Plaintiffs are desperate to avoid Virginia law because of its strictures on the kind of derivative reliance on which Plaintiffs rely.[7]

Plaintiffs cite no Virginia case that would support imposing liability on professional societies for alleged misrepresentations in clinical practice guidelines directed to doctors. Indeed, the Virginia case that comes the closest to the facts at hand refused to extend the law as Plaintiffs seek. *Nasser v. Parker*, 455 S.E.2d 502,

---

[7]  Whatever state law applies, Plaintiffs had to meet the standards of Federal Rule 9(b)'s requirement of particularity, which applies to both the fraud and misrepresentation claims. Plaintiffs cite *Benchmark Elec., Inc. v. J.M. Huber Corp.*, 343 F.3d 719 (5th Cir. 2003), Brief at 46, which holds that Rule 9(b) applies to both fraud and negligent misrepresentation claims when the two "are based on the same set of alleged facts." *Id.* at 723. That is precisely the situation here.

506 (Va. 1995) (to hold a doctor liable for a failure to warn parties who might be injured by the doctor's patient, the doctor "must be vested with a higher degree of control over the patient than exists in an ordinary doctor-patient or hospital-patient relationship before a duty arises concerning the patient's conduct").[8]

Plaintiffs cite blood bank cases to try to avoid the *Nasser* requirement of control, but these cases are inapposite, as the District Court properly held.  ROA. 6420.  Not one of *Snyder v. American Association of Blood Banks*, 144 N.J. 269 (1996), *Weigand v. University Hospital of New York University Medical Center*, 659 N.Y.S.2d 395 (N.Y. Sup. Ct. 1997), or *Jappell v. Am. Ass'n of Blood Banks*, 162 F.Supp.2d 476 (E.D. Va. 2001), involved misrepresentation claims.  Instead, each addressed allegations that the standards-setting organization was negligent in formulating standards for blood purity and that it controlled its member blood banks. *See, e.g.*, *Snyder*, 144 N.J. at 297 (1996) (organization "exercised control of its member [blood] banks").  *In re Factor VIII or IX Concentrate Blood Products Litig.*, 25 F.Supp.2d 837, 840 (N.D. Ill. 1998), which was a misrepresentation case, cannot

---

[8]  Plaintiffs' derivative reliance theory would not be viable under Texas or New York law either.  *See, e.g.*, *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 501 (5th Cir. 2000) (plaintiff who did not personally rely on alleged misrepresentations could not recover for alleged negligent or fraudulent misrepresentation); *Lauer v. City of New York*, 733 N.E.2d 184, 189 (N.Y. 2000) (no tort duties exist where there is no "'direct contact' and 'reliance'" between the plaintiff and defendant).  As the Court has held, federal courts must tread carefully when parties urge them to expand state common law.  *Rhynes v. Branick Mfg. Corp.* 629 F.2d 409, 410 (5th Cir. 1980).

support Plaintiffs' derivative reliance theory because the plaintiffs there alleged that they had directly relied on the alleged misrepresentations of the defendant.[9]

Even if derivative reliance could support a misrepresentation claim, a doctor's reliance on the Guidelines as a result of the exercise of medical judgment could not be actionable due to the intervening cause of that personal judgment. Plaintiffs recognize the need to argue non-voluntary reliance and therefore assert in their brief that IDSA "compels" doctors to rely on the Guidelines by reporting doctors to state medical boards. Brief at 44 (citing ROA.5667-5771). But in the cited paragraphs of the Third Amended Complaint, Plaintiffs accuse only "the Settling Insurance Companies" of reporting doctors to medical boards. ROA.5667-5671 (TAC ¶¶ 56-67). Nowhere in the Third Amended Complaint do Plaintiffs allege that *IDSA* ever reported a doctor to a medical board.[10]

---

[9] Plaintiffs rely on cases regarding safety standards and warnings for swimming pools, chemicals, and window coverings issued to members of trade associations to argue that IDSA could be held liable even absent any special relationship with them. Brief at 45-46. But IDSA is not a trade association with members required to follow its directives; indeed, on their face the Guidelines show that they are voluntary. Moreover, Plaintiffs' cases did not involve misrepresentation claims and the requirements of a false statement of fact and reliance.

[10] In connection with their original RICO and antitrust claims, which are no longer viable, Plaintiffs made general assertions that "Defendants" as group made complaints to medical boards, but they have never alleged that IDSA made such complaints. Such allegations fall far short of the requirements of Rule 9(b).

Plaintiffs likewise fail to identify a single doctor who allegedly was compelled to rely on the Guidelines. The Third Amended Complaint alleges only that Plaintiff Moreira was told by an unnamed physician that "we really don't recommend any longer treatment than the 28 days" and that Plaintiff Fuller was told by a Dr. McMillion that "other than the IDSA guidelines, he was at a loss of how to treat me." ROA.5710-5711 (TAC ¶¶ 183-184). There is no specific allegation that either doctor was "compelled" to follow the Guidelines, and it is equally plausible that each doctor simply concluded that the Guidelines were persuasive.[11]

Because Plaintiffs have not pled reliance, derivative or otherwise, the District Court's dismissal of Plaintiffs' misrepresentation claims could be affirmed on this alternative ground alone.

### B.   Judicial Estoppel Bars Plaintiffs from Alleging New Personal Injury Damages

The dismissal of Plaintiffs' misrepresentation claims could be affirmed on the independent ground that judicial estoppel precludes Plaintiffs from bringing new claims seeking personal injury damages after representing to the District Court earlier in the case that they were not seeking recovery for personal injuries.

---

[11] No other allegation in the Third Amended Complaint names a doctor who allegedly relied on the Guidelines to the detriment of a plaintiff, much less a doctor who did so out of compulsion. Plaintiffs did not request that the District Court grant them leave to amend their Complaint yet again to correct their pleading deficiencies and have not asked this Court for leave to amend either.

Plaintiffs' original Complaint pled only federal RICO and antitrust claims—not common law misrepresentation claims. All Defendants, including IDSA, joined in a motion to dismiss in which they asserted that Plaintiffs' RICO claims should be dismissed because Plaintiffs sought personal injury damages not recoverable under RICO. ROA.250-251. In response, Plaintiffs represented unequivocally to the District Court that they "are not seeking personal injury damages." ROA.865. The District Court relied on this position in ruling on the motion to dismiss. ROA.1564-1565 ("Plaintiffs specifically disclaim any damages relating to physical pain, mental anguish, pain and suffering, disfigurement or any other personal injury damages.").

Nevertheless, after representing to the District Court that they were not seeking personal injury damages—in order to spare their RICO claims from dismissal—Plaintiffs at the very end of discovery amended their complaint to add new misrepresentation claims that seek personal injury damages on the very same facts.

Judicial estoppel applies when (1) a party's position is "clearly inconsistent with the previous one," (2) the Court "accepted the previous position," and (3) the inconsistency "must not have been inadvertent." *In re Superior Crewboats, Inc.*, 374 F.3d 330, 335 (5th Cir. 2004). Here, all three elements are met.

First, Plaintiffs admit that early in the case they represented that they were not seeking personal injury damages, but they assert they did not represent that they

would not seek personal injury damages if they learned later in the case of facts and claims entitling them to seek personal injury damages.  Brief at 50.  This argument might have some merit if Plaintiffs had alleged new facts to support their personal injury claims.  However, as described below, Plaintiffs' new misrepresentation claims are not based on any new facts.

Second, there is absolutely no question that the District Court accepted Plaintiffs' representation that they were not seeking personal injury damages when denying Defendants' motion to dismiss the original Complaint.  ROA.1564-1565.

Finally, Plaintiffs cannot dodge application of judicial estoppel by asserting that their inconsistency was inadvertent.  Plaintiffs assert that they did not have the facts necessary to support their misrepresentation claims until they took the depositions of the Doctors and IDSA.  However, the depositions revealed ***no*** new facts, and Plaintiffs alleged ***no*** new facts in their Third Amended Complaint but merely restated facts already alleged in their original Complaint.  If Plaintiffs believed they had viable misrepresentation claims that would permit them to recover for their personal injuries, they could have brought them in their original Complaint, when they alleged that Defendants "fraudulently and wrongfully" misled Plaintiffs' doctors.  ROA.97 (Complaint ¶ 99).

Because Plaintiffs took a position in their Third Amended Complaint contrary to the prior representation they made to the District Court to save their RICO claims,

the District Court's dismissal of Plaintiffs' misrepresentation claims could be affirmed on the alternative ground of judicial estoppel.

## III.    The District Court's Award of Costs To IDSA Should Be Affirmed

The award of costs should be affirmed because (1) IDSA prevailed below on Plaintiffs' RICO and antitrust claims; (2) Plaintiffs did not appeal the judgments with prejudice entered in IDSA's favor on those claims; (3) all of IDSA's awarded costs related to its defense of Plaintiffs' RICO and antitrust claims; and (4) Plaintiffs consented to the award of costs to IDSA and to the amount.[12]

## <u>CONCLUSION</u>

Plaintiffs' lawsuit was aimed at health insurance companies they claimed used IDSA's Lyme disease Guidelines to deny coverage for treating what Plaintiffs claimed were the long-term effects of Lyme disease.  Plaintiffs included IDSA to provide the conspirator needed for their RICO and antitrust claims.  Plaintiffs settled with the health insurers and either dismissed or lost all of their original claims against IDSA.  Desperate to keep their case alive, Plaintiffs renamed their allegations as "misrepresentations" and recharacterized their injuries as "personal" despite making directly contrary statements to the District Court earlier in the case.  They then alleged that "derivative" and compelled reliance by unnamed doctors met a critical

---

[12] ROA.6459 ("Plaintiffs agree with Defendant's proposed Bill of Cost [sic].").

element of misrepresentation without naming any doctor who so relied.  A more manufactured lawsuit is hard to imagine.

The Guidelines take one position in an ongoing medical debate.  Other doctors—and other guidelines—take the opposite position.  The Guidelines are statements of opinion, not fact, and cannot be the basis of misrepresentation claims.

The judgment of the District Court should be affirmed.

Dated: April 10, 2023                     Respectfully submitted,


                                          /s/ Alvin Dunn
                                          Alvin Dunn
                                          Jack McKay
                                          Michael Warley
                                          Pillsbury Winthrop Shaw Pittman LLP
                                          1200 Seventeenth Street, NW
                                          Washington, DC  20036
                                          (202) 663-8000
                                          alvin.dunn@pillsburylaw.com

                                          Casey Low
                                          Pillsbury Winthrop Shaw Pittman LLP
                                          401 Congress Avenue, Suite 1700
                                          Austin, TX 78701-3797
                                          (512) 580-9616
                                          casey.low@pillsburylaw.com

                                          **COUNSEL FOR APPELLEE**
                                          **INFECTIOUS DISEASES SOCIETY OF**
                                          **AMERICA**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 10th day of April 2023, the foregoing document

was served on the following individuals via the Court's e-filing system.

Daniel R. Dutko
Rusty Hardin & Associates, LLP
1401 McKinney St., Suite 2250
Houston, TX 77010
P: (713) 652-9000
F: (713) 652-9800
ddutko@rustyhardin.com

Kendall Valenti Speer
Rusty Hardin & Associates, LLP
1401 McKinney St., Suite 2250
Houston, TX 77010
P: (713) 652-9000
F: (713) 652-9800
kspeer@rustyhardin.com

**ATTORNEYS FOR APPELLANT**

*/s/ Alvin Dunn*

## <u>CERTIFICATE OF COMPLIANCE</u>

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 6459 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office 365 in 14-point Times New Roman font.

*/s/ Alvin Dunn*