No. 22-40728

# In the
# United States Court of Appeals
# for the Fifth Circuit

---

LISA TORREY, ET AL.,

*Plaintiffs-Appellants,*

v.

INFECTIOUS DISEASES SOCIETY OF AMERICA,

*Defendant-Appellee.*

---

On Appeal from United States District Court
For the Eastern District of Texas, Texarkana Division
Civil Action No. 5:17-cv-190-RWS

---

## REPLY BRIEF FOR APPELLANTS

---

Daniel R. Dutko
Kendall Valenti Speer
RUSTY HARDIN & ASSOCIATES, L.L.P.
5 Houston Center
1401 McKinney Street, Suite 2250
Houston, Texas 77010
(713) 652-9000 Phone
ddutko@rustyhardin.com
kspeer@rustyhardin.com

**COUNSEL FOR PLAINTIFFS-APPELLANTS**

# TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS……………………………………………………  i

TABLE OF AUTHORITIES………………………….………………………..  ii

I.    INTRODUCTION…………………………………………….......  1

II.    ARGUMENT………………………………………………….....  2

    A.    THE TRIAL COURT CLEARLY ERRED……………..............  2

III.    CONCLUSION………………………………………………………  6

CERTIFICATE OF SERVICE…………………………………………………  7

CERTIFICATE OF COMPLIANCE………………………………………………  8

# TABLE OF AUTHORITIES

**PAGE**

*Eastman Chem. Co. v. Plastipure, Inc.*
775 F.3d 230, 237 (5th Cir. 2014)……………………………………………… 3

*Paull v. Cap. Res. Mgmt., Inc.*,
987 S.W.2d 214, 218 (Tex. App.—Austin 1999, pet. denied)………………. 2

*Torrey v. Infectious Diseases Soc'y of Am.,*
No. 5:17-cv-00190-RWS, 2021 WL 6774574,
(E.D. Tex. Sept. 20, 2021)……………………………………………… 2

## I.     INTRODUCTION

The chronic Lyme disease ("CLD") epidemic affects hundreds of thousands of people around the world. The situation is so bad that Stanford University recently created the Lyme Disease Working Group, Columbia University recently created the Lyme and Tick-Borne Disease Research Center, and an award-winning documentary about CLD is currently playing around the country.

It is not hyperbole to state that the cause of this epidemic is the IDSA. It is impossible to find an infectious disease doctor who is not a member of the IDSA. Infectious disease doctors rely solely on the IDSA guidelines in treating Lyme because the IDSA does everything in their power to discredit any other guidelines or recommendations.

The primary issue in this case is that Plaintiffs are alleging the IDSA's guidelines regarding CLD and treatment failure are false statements of fact. In response, the IDSA makes numerous arguments including that its guidelines are protected by the First Amendment, its guidelines are not statements of fact, and the language in the guidelines do not really say what they say. Interestingly, throughout its entire brief, as well as this entire case, the IDSA **<u>never</u>** responded to Plaintiffs' allegations by arguing the guidelines are true.

Instead, the IDSA misquotes and mischaracterizes its own Guidelines. But the IDSA cannot escape the fact that the Guidelines are provided to medical personnel to

treat Lyme disease and the statements in the Guidelines tell medical personnel they are statements of scientific fact.

## II.    ARGUMENT

### A.    THE TRIAL COURT CLEARLY ERRED

In dismissing both of Plaintiffs' misrepresentation claims, the District Court held that Plaintiffs failed to adequately plead a "false representation" because the Guidelines are medical opinions. *Torrey*, 2021 WL 6774574, at *5. The District Court erred because it did not review the Guidelines "in the context in which each statement is made." *Paull v. Cap. Res. Mgmt., Inc.*, 987 S.W.2d 214, 218 (Tex. App.—Austin 1999, pet. denied). The District Court failed to consider the purpose of the Guidelines and overall impact within the medical community. *Torrey*. at *6.

A review of the substance of the Guidelines establishes that they represent to be statements of scientific fact and are intended for use by health care providers in treating Lyme disease.

These Guidelines are not articles published in scientific journals discussing medical debates. According to the IDSA' own words, they are "**Evidence-based guidelines for the management of patients with Lyme disease**" and "**are intended for use by health care providers who care for patients**". ROA.6002 (emphasis in original).

2

The cases cited by the IDSA protect "a robust discourse in the pages of academic journals". *See Eastman Chem. Co. v. Plastipure, Inc.*, 775 F.3d 230, 237 (5th Cir. 2014). The Guidelines were not published in an academic journal and do not engage in discourse regarding any debate. The Guidelines are specifically published by the IDSA so that doctors can use them to treat Lyme disease. ROA.6002.

More than that, the Guidelines contain false statements that purport to be scientific fact. The very first section of the Guidelines, the Executive Summary states: "There is no convincing biological evidence for the existence of symptomatic chronic *B. burgdorferi* infection after receipt of recommended treatment regimens for Lyme disease". ROA.6007. It is impossible to read this statement as anything but a representation of scientific fact. The IDSA argues the word "convincing" somehow changes this fact into an opinion. Does the IDSA really expect that doctors will rely on "unconvincing" biologic evidence?

Appellants' opening brief identifies numerous examples within the Guidelines claiming lack of CLD or treatment failure.  Appellants' Brief at 8-11. The language quoted from the Guidelines establishes that the Guidelines claim to be scientific fact and do not allow for any disagreement or discourse. *Id*.

In response, the IDSA attempts to run away from the language in its own Guidelines by arguing "the Guidelines specifically recognize that initial treatment

might fail". Appellee Brief at 19. The language cited by the IDSA in its brief actually supports Plaintiffs' assertions that the Guidelines are statement of facts.

For example, the IDSA quotes the following language on page 15 of the Guidelines: "Most patients respond promptly and completely" and "some individuals has persistent subjective complaints". ROA.6017. IDSA argues the use of "most" and "some" somehow proves that the Guidelines recognize CLD and treatment failure. This is a perfect example of the dangers of looking solely at specific statements instead of the substance of the Guidelines. *Id*. A careful reading of the paragraph from which this language is pulled shows that this section relates to the type of antibiotics used, not treatment failure. More importantly, this paragraph says that even though some patients still have complaints after these specific antibiotics are used, they are cured but simply "take longer to have a complete response to therapy". *Id*.

Likewise, the IDSA relies on the language: "appropriate antibiotic therapy leads to recovery in most patients" but ignores the sentence immediately preceding this statement which says that even though some people still have symptoms, they are actually cured but their treatment is just slow to show results: "The response to treatment of late manifestations may be slow, and weeks to months may be required for improvement or resolution of symptoms after treatment. ROA.6023.

Finally, the IDSA quotes language from the section related to Lyme arthritis. As set forth in the Guidelines, Lyme arthritis is a completely different disease and does not relate to CLD.  ROA.6023.  However, even the section in the Guidelines related to Lyme arthritis specifically states that there is no treatment failure for Lyme arthritis, some people just require 30-days of antibiotics, instead of 14-days, and a few people may require intravenous antibiotics.  ROA.6026.

The IDSA did not cite any language in the Guidelines refuting Plaintiffs' allegations that the Guidelines purport to be scientific fact. Instead, the IDSA claims that the Guidelines "acknowledge the ongoing debate" and "recognize the existence of a debate by avoiding unequivocal statements".  The IDSA argues that by engaging in debate, the Guidelines turn into scientific opinions.

What the IDSA did not tell this Court is that the language quoted by the IDSA to prove "ongoing debate" is contained in the section titled: "**Do viable B. burgdorferi persist in tissues despite antibiotic treatment?**" ROA.6030. In this section, the Guidelines recognize that some people claim they have CLD and claim they were not cured by short-term antibiotics. *Id*. Instead of acknowledging any debate as the IDSA alleges, this section of the Guidelines dismisses claims of CLD and treatment failure out of hand. *Id*. At the conclusion of this section, the IDSA answers the question posed above with the following answer: "To date, there is no convincing biologic evidence for the existence of symptomatic chronic B.

5

burgdorferi infection among patients after receipt of recommended treatment regimens for Lyme disease." ROA.6033.

This is the opposite of debate. Debate is providing both sides, not simply saying that the other side exists but they are wrong.

It is clear that the IDSA presents the Guidelines as statements of scientific fact to be used by health care providers in treating Lyme disease. It is impossible to come to any other conclusions then the Guidelines are reviewed "in the context in which each statement is made".

## III.   CONCLUSION

This Court should reverse the trial court's decision and remand this case to the trial court for further proceedings.

Respectfully submitted,

RUSTY HARDIN & ASSOCIATES, L.L.P.
*/s/ Daniel R. Dutko*
Daniel R. Dutko
State Bar No. 24054206
Federal I.D. No. 753525
ddutko@rustyhardin.com
Kendall Valenti Speer
State Bar No. 24077954
kspeer@rustyhardin.com
5 Houston Center
1401 McKinney Street, Suite 2250
Houston, Texas 77010
(713) 652-9000 Phone
(713) 586-3826 Direct

**COUNSEL FOR APPELLANTS**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 15, 2023, the foregoing document was served, via the

Court's CM/ECF Document Filing System, upon the following registered CM/ECF

users:

Alvin B. Dunn
1200 Seventeenth Street, NW
Washington, DC 20036
Phone (202) 663-8000
Facsimile (202) 663-8007
alvin.dunn@pillsburylaw.com

**COUNSEL FOR APPELLEE**

By:   /s/ *Daniel R. Dutko*
       Daniel R. Dutko

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because this brief contains 1,222 words, excluding the parts of the document exempted by FED. R. APP. P. 32(f), and 5th CIR. R. 32.1.

2.      This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 pt. Times New Roman font.

3.      It is understood that a material misrepresentation in this certificate may result in the striking of this brief and imposition of sanctions against the undersigned.


By:   /s/ *Daniel R. Dutko*
            Daniel R. Dutko

8